UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NEAL OWEN KELLY, JR.,

                Plaintiff,       6:18-cv-06431-MAT
                                   **DECISION AND ORDER**
             -v-

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.
_____

## **INTRODUCTION**

    Neal Owen Kelly, Jr. ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Docket No. 1. The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Docket Nos. 9, 16.[1] For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

---

[1] Plaintiff styles his motion a "Motion for Summary Judgment." *See* Docket No. 9. However, the Court considers dispositive motions in Social Security cases pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings.

**PROCEDURAL BACKGROUND**

On August 15, 2014, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of November 18, 2013, due to manic depression, degenerative disc disease, spinal stenosis, intervertebral lumbar disc disorder with myelopathy, lumbago syndrome, and "unspecified arthropathy at unspecified sites." Administrative Transcript ("T.") 17, 119-20, 129-30, 139-40. The claims were initially denied on September 30, 2014. T. 17, 143-158. At Plaintiff's request, hearings were conducted on November 16, 2016, and July 18, 2017, by administrative law judge ("ALJ") Elizabeth W. Koennecke. T. 17, 46-56, 62-99. An impartial vocational expert testified at the supplemental hearing. *Id*. The ALJ issued an unfavorable decision on August 24, 2017. T. 14-36. Plaintiff appealed the decision to the Appeals Council, which denied his request for review on April 27, 2018, making the ALJ's decision the Commissioner's final determination. T. 1-4. This action followed.

**THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The ALJ initially found that Plaintiff meets the insured status requirements of the Act through December 31, 2019. T. 20. At step

one of the sequential evaluation, the ALJ found that Plaintiff performed significant work activity after the alleged onset date, but the record did not clearly establish that Plaintiff had engaged in substantial gainful activity for more than a brief period in the summer of 2014. *Id.*

At step two, the ALJ determined that Plaintiff's "back impairment" was "severe." *Id*. The ALJ also determined that Plaintiff's medically determinable impairments of headaches/migraines, obesity, and any mental impairment, did not cause significant work-related functional limitations and thus were non-severe. T. 21-23.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 23. The ALJ specifically considered Listings 1.02 (major dysfunction of a joint); 1.04 (disorders of the spine); 14.09 (inflammatory arthritis); 1.00 (musculoskeletal impairments); 11.00 (neurological disorders); and 14.00 (impairments of the immune system). T. 23-24.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a), except that he "requires the ability to alternate

positions every hour or to perform the job standing or sitting while remaining on task." T. 24.

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. T. 32.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of ticket taker, document preparer, and assembler. T. 33-34. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 35-36.

## **SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)

(quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that remand is warranted because the ALJ committed reversible error by substituting her own opinion regarding Plaintiff's RFC for that of competent medical opinion. *See* Docket No. 9-1 at 5. Plaintiff argues that the record contains only one assessment of Plaintiff's physical abilities following his lumbar fusion surgery in October 2015. This assessment was completed by James Coleman, M.D., Plaintiff's treating physician, and the ALJ gave this opinion only little weight. *Id*. at 6-7. Accordingly, Plaintiff concludes that the ALJ "formulate[d] a residual functional capacity without the benefit of any medical source opinion." *Id*. at 8.

"When assessing a disability claim, an ALJ has the responsibility of determining a claimant's RFC based on all of the relevant medical and other evidence of record." *Mack v. Commissioner*, No. 1:18-cv-00265-MAT, 2019 WL 1994279, at *4

(W.D.N.Y. May 6, 2019) (citations omitted); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate responsibility to determine a claimant's RFC rests solely with the ALJ). "[T]he ALJ is required to articulate the reasons for the RFC determination, which 'must include a narrative discussion describing how the evidence supports each conclusion.'" *Quinto v. Berryhill*, No. 3:17-cv-00024(JCH), 2017 WL 6017931, at *5 (D. Conn. Dec. 1, 2017) (quoting SSR 96-8p, at *7)).

An RFC finding need not correspond to any particular medical opinion; rather, the ALJ must weigh and synthesize all evidence available to render an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("the ALJ's RFC finding need not track any one medical opinion"). However, "[b]ecause an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf v. Commissioner*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). Accordingly, "[a]n ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by

substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC." *Quinto*, 2017 WL 6017931, at *12 (citations omitted).

Here, the ALJ assessed an RFC limiting Plaintiff to performing sedentary work, with the additional limitation that Plaintiff have the ability to alternate positions every hour, or to work standing or sitting while remaining on task. T. 24. Pursuant to the regulations, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

Plaintiff contends that, given the ALJ's consideration and weighing of the opinion evidence offered in connection with his claim, the ALJ substituted her own judgment for that of competent medical opinion evidence. A review of the ALJ's very detailed written determination reveals that this is not the case. As explained below, the ALJ considered all of the evidence in the record, including medical opinion evidence, objective medical evidence, and Plaintiff's own subjective reports of pain, and explained how this evidence informed the assessed RFC. The ALJ's

consideration of all the evidence as a whole was proper. *See Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

With regard to the opinion evidence offered in connection with Plaintiff's claim, the ALJ clearly explained in the written determination how the opinions offered by Gilbert Jenouri, M.D., the consultative examiner, Dr. Gregorie, Plaintiff's treating neurosurgeon, and James Coleman, M.D., Plaintiff's primary care provider, informed the RFC. T. 28-32. For example, the ALJ gave the opinion offered by Dr. Jenouri "great weight." T. 28. The ALJ explained how the various limitations assessed by Dr. Jenouri informed the RFC:

> As for the opinion evidence, the established residual functional capacity is generally supported by the medical opinion of consultative examiner, Gilbert Jenouri, M.D. Based on pre-operative examination in September 2014, Dr. Jenouri determined that the claimant has stable prognosis with mild limitations in lifting, carrying, standing, walking, and sitting for long periods with additional limitations in bending and climbing stairs. Dr. Jenouri did not otherwise identify any manipulative or environmental limitations or restrictions.
>
> While the Administrative Law Judge does not adopt all of the limitations identified by Dr. Jenouri with respect to the postural limitations, Dr. Jenouri's opinion is accorded great weight because it is generally supported by the objective medical evidence that indicates that the claimant is precluded from performing very heavy, heavy, medium, and light work activity due to his back

> impairment, but otherwise retains the maximum residual functional capacity to perform a range of sedentary work activity. . . . The Administrative Law Judge notes that the mild limitations in prolonged sitting identified by Dr. Jenouri are reflected in the residual functional capacity for the ability to alternate positions every hour or to perform the job standing or sitting while remaining on task. However, greater exertional and non-exertional limitations are not supported by the pre-operative and post-operative clinical and laboratory findings from various medical sources.

T. 28.

Likewise, the ALJ explained her consideration of the opinions offered by Plaintiff's treating neurosurgeon, Dr. Gregorie. *See* T. 29 (Dr. Gregorie's opinion that Plaintiff could not work for any meaningful length of time at his construction job was afforded "some weight" in determining the maximum residual functional capacity, because "the finding that the claimant is unable to return to work is an issue reserved to the Commissioner in determining the claims for Social Security benefits," and "the claimant's work activity involving construction equipment involves greater physical demands than are contemplated by the residual functional capacity.").

The ALJ also explained why portions of Dr. Coleman's opinions regarding Plaintiff's exertional limitations were not supported by the record and therefore were not included in the RFC. T. 29-32. Because Dr. Coleman was a treating source, the ALJ was obligated to consider the following factors in assessing his opinions: "the length of the treatment relationship and the frequency of

examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotations, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6). "The regulations also specify that the Commissioner 'will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion.'" *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alterations in original).

It is clear to the Court that the ALJ considered the above-mentioned factors in weighing the opinions offered by Dr. Coleman, and gave good reasons for declining to give them controlling weight. For example, the ALJ discussed Dr. Coleman's examinations of Plaintiff, including that Dr. Coleman did not identify any significant positive objective clinical findings in May 2014, August 2014, August 2016, and October 2016, to support the limitations he identified. T. 30; *see also Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) ("Because Dr. Gupta's medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight."). The ALJ also

considered Dr. Coleman's relationship with Plaintiff, including his treatment of Plaintiff's back impairment. *See* T. 30 ("Dr. Coleman indicated that he is not treating the claimant for his back impairment and does not see him [very] often. Instead, Dr. Coleman specified in October 2016 that his medical opinion is based primarily on the claimant's subjective self-reports of symptoms and functional limitations[.]"). Further, the ALJ discussed the consistency of Dr. Coleman's opinions with other opinions in the record. *See, e.g.*, T. 30 ("few medical sources identified problems with the claimant's balance or coordination on physical exam."); *id*. ("None of the medical sources noted any ongoing difficulties with the claimant's personal hygiene or grooming to indicate any chronic difficulty using his upper extremity to care for his own personal needs."); T. 31 ("Records from [Plaintiff's] medical sources do not reflect chronic complaints of difficulty with prolonged sitting."). The ALJ explained that other limitations assessed by Dr. Coleman, including limitations for lifting and carrying no more than 10 pounds, standing/walking no more than two hours, and changing positions every hour, "which fully account for observations in the record that the claimant needed to shift positions due to pain behavior," were incorporated into the RFC. *See* T. 31.

Plaintiff's argument presupposes that it was inappropriate for the ALJ to consider Dr. Jenouri's opinion because it was rendered

-11-

prior to his October 2015 surgery. He argues that Dr. Coleman's opinion is the only assessment in the record that post-dates Plaintiff's October 2015 surgery. *See* Docket No. 9-1 at 6 ("In the instant case the administrative transcript contains only one assessment (Dr. James Coleman, M.D. - Tr. 608-609) of the Plaintiff's physical abilities completed by acceptable medical sources following the Plaintiff's lumbar fusion surgery that took place on October 6, 2015."). Plaintiff refers to the "Medical Source Statement of Ability to do Work-Related Activities (Physical)" completed by Dr. Coleman on October 28, 2016 (Exhibit B20F), which the ALJ discussed in the written determination. *See* T. 608-09; T. 29-31. The written determination also contains a thorough discussion of the ALJ's consideration of Dr. Jenouri's opinion, including that it was rendered prior to Plaintiff's October 2015 surgery. T. 28. The ALJ explained that although Dr. Jenouri "did not have the benefit of examining the claimant after surgery . . . post-operative records do not reflect greater chronically positive objective clinical findings to support greater limitations of functioning." *Id.*; *see*, *e.g.*, T. 28-29 ("pre-operative MRI scan of the claimant's lumbar spine taken in May 2014 revealed borderline to mild stenosis at the L2-L3 level and probable nerve root impingement at the L5-S1 level that resolved with lumbar fusion and discectomy at the L5-S1 level with hardware placement in October 2015."); T. 29 ("post-operative laboratory

findings indicate overall improvement in the claimant's condition following his lumbar surgery and a brief recuperative period without recurrence of stenosis or nerve root impingement. Repeat studies reveal stable alignment without evidence of hardware failure. The claimant has not been treated for any post-operative infection or complication of his procedure. There are no findings to suggest that his surgical sites are not well-healed."); *see also* T. 26 ("In April 2016, the claimant reported to his treating orthopedic surgeon that he ha[d] some sensory alteration in both legs and lies down, but that he is otherwise fairly asymptomatic when he is 'up and about.' In August 2016, the claimant's only complaints to his primary care provider were related to skin lesions or ring worm. On repeat occasions, the claimant denied weakness, poor balance, gait abnormality, and decreased sensation in his extremities.") (internal citations omitted). The ALJ did not substitute her own judgment for a competent medical opinion; rather, she relied on evidence in the record showing that Plaintiff's condition did not worsen following his surgery, including Plaintiff's own statements to his medical providers. Plaintiff has not identified any specific evidence indicating that his condition worsened following his October 2015 surgery. Accordingly, the ALJ's reliance on Dr. Jenouri's opinion was proper.

Plaintiff cites to various cases where the Court determined that the ALJ's RFC was based on his or her own interpretation of the medical record. *See* Docket No. 9-1 at 8-10. The cases cited by Plaintiff are inapposite. The Court is cognizant that an ALJ may not assess a plaintiff's RFC without the benefit of any medical opinion evidence. However, in this case, the ALJ did not assess the RFC in a vacuum; rather, she determined Plaintiff's RFC by weighing all of the evidence in the record, including opinions offered by three different medical sources - Drs. Jenouri, Gregorie, and Coleman - and provided a detailed explanation as to how the limitations offered by these sources were or were not incorporated into the RFC.

Plaintiff requests that the Court remand this case for further consideration of Dr. Coleman's opinions and/or for further development of the record. *See* Docket No. 9-1 at 10. As noted above, the ALJ thoroughly considered Dr. Coleman's opinions, offering over two pages of explanation as to why she declined to give them controlling weight. *See* T. 29-32. Accordingly, the Court does not believe that further consideration of these opinions would be appropriate or helpful in this instance.

To the extent Plaintiff argues that the ALJ erred by not further developing the record, the Court finds that remand on this basis is not warranted. The Court is cognizant that where there are perceived deficiencies in the record, the ALJ has an

affirmative obligation to develop it. *See Rosa*, 186 F.3d at 79; *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1998) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48). Here, the record contains over two hundred pages of medical records (*see* T. 417-640), including opinion evidence offered by both consultative and treating sources. Remand for further development of the record is not required in this instance. *See Tankisi v. Commissioner*, 847 F. Supp. 2d 513, 518 (W.D.N.Y. 2012) (further development of the record was not necessary, as the plaintiff's medical records were complete, and the plaintiff was examined by both medical and psychological experts), *aff'd*, 521 F. App'x 29 (2d Cir. 2013).

In sum, Plaintiff's contention that the ALJ assessed an RFC without the benefit of opinion evidence is belied by the record. The ALJ explained, by citing to specific evidence in the record, how she assessed Plaintiff's RFC. The ALJ's reliance on this evidence, including Dr. Jenouri's opinion, was proper in this instance. *See Graham v. Colvin*, No. 13-CV-940S, 2014 WL 5465460,

at *3 (W.D.N.Y. Oct. 28, 2014) ("the opinions of consultative physicians and State agency consultants can constitute substantial evidence where . . . they are consistent with the other evidence in the record."); see also Brogdon v. Berryhill, No. 17-CV-7078(BCM), 2019 WL 1510459, at *10 (S.D.N.Y. Mar. 22, 2019) ("If the opinion of a treating physician is either absent or deemed not controlling, the opinions of consultative examiners and state agency reviewers may provide substantial evidence to support an ALJ's RFC determination."). Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied, and the Commissioner's motion for judgment on the pleadings (Docket No. 16) is granted. Plaintiff's complaint is dismissed with prejudice. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   December 16, 2019
         Rochester, New York